**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA,**

       **v.**                      **Cr. No. 1:07-CR-226**
                                        **(GLS)**

**CHARLES VASCONCELLOS; SHERWIN**
**MAXWELL; McKINSEY WILLIAMS;**
**LEE WALLACE; CHRISTINA SANTANA;**
and **TONY JORDAN,**

                        **Defendants.**

**APPEARANCES:**                  **OF COUNSEL:**

**FOR THE UNITED STATES:**

HON. ANDREW T. BAXTER        DANIEL HANLON, ESQ.
United States Attorney            Assistant U.S. Attorney
445 Broadway
218 James T. Foley Courthouse
Albany, NY 12207-2924

**FOR THE DEFENDANT CHARLES**
**VASCONCELLOS:**

LUIBRAND LAW FIRM, PLLC      KEVIN A. LUIBRAND, ESQ.
950 New Loudon Road
Latham, NY 12110

**FOR THE DEFENDANT SHERWIN**
**MAXWELL:**

PELAGALLI, WEINER LAW FIRM  FREDERICK RENCH, ESQ.
646 Plank Road, Suite 204
Clifton Park, NY 12065

**FOR THE DEFENDANT McKINSEY**
**WILLIAMS:**

OFFICE of MARK J. SACCO     MARK J. SACCO, ESQ.
38 North Ferry Street
Schenectady, NY 12305

**FOR THE DEFENDANT LEE**
**WALLACE:**

OFFICE of DAVID J. RYNKOWSKI     DAVID J. RYNKOWSKI, ESQ.
50 Sherwood Avenue
Rensselaer, NY 12144

**FOR THE DEFENDANT CHRISTINA**
**SANTANA:**

OFFICE of MICHAEL D. JURENA     MICHAEL D. JURENA, ESQ.
817 Madison Avenue
Albany, NY 12208

**FOR THE DEFENDANT TONY**
**JORDAN:**

CORRIGAN, McCOY LAW FIRM     JOSEPH M. McCOY, ESQ.
220 Columbia Turnpike
Rensselaer, NY 12144

**Gary L. Sharpe**
**U.S. District Judge**

## Memorandum-Decision and Order

### I.   Introduction

The six captioned defendants and twenty-one others were indicted

2

for participating in a cocaine trafficking conspiracy during a five-month period in 2007.  (*See* Indictment, Count 1, Dkt. No. 1; *see also* 21 U.S.C. §§ 846, 841(b)(1)(A).)  Nineteen pled guilty, and of the remaining eight, six filed pending pretrial motions.  (*See* Vasconcellos Mot., Dkt. No. 339; Maxwell Mot., Dkt. Nos. 340, 395-96; Williams Mot., Dkt. No. 342; Santana Mot., Dkt. No. 343; Jordan Mot., Dkt. No. 277; Wallace Mot., Dkt. No. 356.)  The government filed responses.  (*See* Dkt. Nos. 360, 400.)

The indictment followed a joint local, state, and federal investigation. The government's primary evidence consists of conversations intercepted over state-authorized wiretaps on seventeen cellular telephones, and physical evidence seized during searches that followed the electronic surveillance.

Mounting a multi-faceted wiretap attack, all defendants seek to suppress intercepted conversations, and several seek to suppress physical evidence.  Maxwell, Williams, Santana, and Wallace seek to join the motions of others.  Jordan seeks to preclude the government's use of uncharged crimes, and Wallace and Santana seek permission to file additional motions.  Wallace seeks dismissal of the indictment, further discovery, a bill of particulars, a severance, and an audibility and *Franks*

hearing.  S*ee Franks v. Delaware*, 438 U.S. 154 (1978).

For the reasons that follow, the motion to join other motions is granted in part, and all remaining motions are denied.

## II.    Miscellaneous Applications for Omnibus Relief

### A.    Background

After the defendants' arraignment, the court issued this district's standard Criminal Pretrial Scheduling Order (Order).  (*See, e.g.*, Dkt. No. 11.)  In *United States v. Elliott*, 363 F. Supp.2d 439, 442-48 (N.D.N.Y. 2005), familiarity with which is presumed, this court discussed the impact of that Order and the local and federal rules on discovery, other pretrial matters and motion practice.  *See also United States v. Miller*, 382 F. Supp.2d 350, 355, 359-61 (N.D.N.Y. 2005); *United States v. DeLouya*, No. 1:04-CR-588, 2005 WL 3244173, at *5-7 (N.D.N.Y. Nov. 30, 2005); *United States v. Tudoran*, 476 F. Supp.2d 205, 216 (N.D.N.Y. 2007) ("The time is ripe to articulate the concept one last time ...."). If nothing else, the defense bar should understand that these decisions mandate the following: those seeking pretrial relief *must* specifically identify the relief sought, *must* recite the factual and legal bases for the requests, and *must* recite the measures employed to obtain relief without judicial intervention.

After the Order issued, the court held a conference and discussed,

*inter alia*, the scope of discovery, discovery deadlines and motion practice.

(*See, e.g.*, 6/15/07 Dkt. Entry.)  Consistent with the Order and rules, the

government began compliance with its discovery obligations beforehand,

and submitted a letter cataloguing numerous materials it would disclose.

(*See* Gov't Ltr., Dkt. No. 86; Gov't Disc. Disclosure Statement, Dkt. No. 91.)

After the conference, it continued to comply.  (*See* Gov't Disclosure

Statement, Dkt. No. 108.)[1]

Eventually, the court held a final pre-motion conference, (*see* Dkt.

No. 322), and the government stated, without objection, that it had fully

satisfied its disclosure obligations.  The court also discussed a possible

joint wiretap motion.  On behalf of Maxwell, Frederick Rench, Esq. said that

---

[1]In all, the government disclosed: 90,000 recorded wiretap conversations; search warrants and applications, consent forms, inventories of seized items; individual CDs with a defendant's intercepted calls; police reports, surveillance logs and videos; physical evidence, including drugs and guns; copies of wiretap applications and orders; defendants' statements and calls intercepted on an individual defendant's cell phone pursuant to FED. R. CRIM. P. 16(a)(1)(A) & (B); defendants' prior arrest and conviction records pursuant to FED. R. CRIM. P. 16(a)(1)(D); copies of seizure documents, video surveillance records, police reports, information regarding undercover drug purchases; physical evidence pursuant to FED. R. CRIM. P. 16(a)(1)(E); drug test results pursuant to FED. R. CRIM. P. 16(a)(F); notice of anticipated expert testimony pursuant to FED. R. CRIM. P. 16(a)(G); notice regarding the absence of so-called *Brady* exculpatory material; notice of its intention to timely notify defendants of prior bad acts or convictions; notice of intention to promptly supplement disclosures; and agreement to supply so-called *Giglio* and Jencks material, including grand jury transcripts. *See Giglio v. United States*, 407 U.S. 150 (1972) (common reference to impeachment material for key government witnesses); 18 U.S.C. § 3500 (Jencks Act) (common reference to prior statements and reports of witnesses).

he would submit a motion containing a multi-pronged wiretap attack, and

he suggested that others might wish to join.  While some of his brethren

concurred, others did not, and most remained silent.  The court stated that

it favored a joint submission, but never intimated that defendants had

unconstrained permission to join all other motions.  Moreover, *Elliott*'s

mandate remained unaltered.

Regarding discovery, no defendant has filed the certification required

by the Order and local rules.  (*See* Order at ¶ II(G),[2] Dkt. No. 11; *see also*

L. R. CRIM. P. 14.1(g).)  The rationale for this rule is clear:

> It is the Court's policy to rely on the discovery procedure as set
> forth in this Order as the sole means of the exchange of
> discovery in criminal actions ... [and t]his Order is intended to
> promote the efficient exchange of discovery without altering the
> rights and obligations of the parties, *while at the same time
> eliminating the practice of routinely filing perfunctory ...
> discovery motions*.

(*Id.* at ¶ II(A) (emphasis added); *see also* L. R. CRIM. P. at 14.1(a).)  Lastly,

the Order and Local Rule 14.1 control the timing and content of the

---

[2]"No attorney shall file a discovery motion without first conferring with opposing
counsel, and no motion will be considered by the Court unless it is accompanied by a
certification of such conference and a statement of the moving party's good faith efforts to
resolve the subject matter of the motion by agreement with opposing counsel."

government's disclosures.[3]  As confirmed by its disclosure statements and repeated written and verbal assurances, the government has fully complied with the rules.

Given this background, the court turns to what it characterizes as miscellaneous requests for relief.

### B.    Motions to Join

Maxwell, Williams, Santana, and Wallace seek to join the motions of others.  Such a pro forma request makes little sense absent the particularization required by *Elliott*.  Otherwise, the court must speculate about the basis for the request and the specific relief sought.  Sometimes, joint motions might make sense such as a joint wiretap motion.  No such motion was forthcoming.

Nonetheless, and with trepidation because of the escalated complexity caused this decision, the court permits the joining defendants to adopt the *specific* wiretap arguments of others, at least to the extent that

---

[3]The order establishes disclosure dates for the following: FED. R. CRIM. P. 16 and 12 information; exculpatory information, *see Brady v. Maryland*, 373 U.S. 83 (1963); FED. R. EVID. 404(b) information; and *Giglio*, Jencks Act, and testifying informant information.  (*See* Order at ¶ II(B)(1)-(3), (D)-(F), Dkt. No. 11; L. R. CRIM. P. 14.1(b)(1)-(3), (d)-(f).)

they have standing to do so.  Otherwise, the motions are denied.[4]

## C.  __Indictment Dismissal__

Wallace moves to dismiss the indictment.  (*See* Wallace Mot. at ¶ 6, Dkt. No. 356.)  In an accompanying twenty-two page affidavit and fifty-two page legal memorandum, he cites no facts or law.  The court is not telepathic.  The motion is denied.

## D.  __Discovery__

Wallace seeks discovery of virtually all things that occupied his stream of consciousness as he prepared his motion, and a companion order compelling the government to scour the world's archives in search of those things.  Generically, those things include: (1) items specifically encompassed by Rules 12 and 16 of the Federal Rules of Criminal Procedure (e.g., defendant's statements and prior record; documents and objects; evidence to be used at trial); (2) so-called exculpatory or impeachment material; and (3) non-Rule 16 investigative and trial materials (e.g., a list of government witnesses; a list of anyone who may know something about the case; a list of informants and cooperating defendants;

---

[4]The Wilson defendants and White all filed motions that were subsequently denied as moot when they entered unconditional pleas. (*See* FED. R. CRIM. P. 11(a)(2).)  Accordingly, there is nothing to join or adopt.  Therefore, the court declines to consider their motions to sever and strike indictment surplusage.

a list of all police officers involved in the investigation; disclosure of all

federal, state and local police, military and prison records of all defendants,

co-defendants and coconspirators; and grand jury transcripts).  (*See, e.g.*,

Wallace Mot., Rynkowski Aff. at ¶ 16(a)-(q), Dkt. No. 356.)

Wallace's motion is denied for the following alternative reasons:  (1)

he has failed to confer and certify as required by the Order and local rules;

(2) the government has fully complied with its discovery obligations, and

already disclosed most of what Wallace seeks; (3) the government has

certified compliance with its current and continuing obligation to disclose

exculpatory information, and Wallace has offered no facts suggesting the

contrary; (4) despite the incredible breath and scope of his request,

Wallace has cited no legal authority beyond a casual reference to Rule 16

and *Brady*; and (5) he is not legally entitled to the discovery he seeks

absent a particularized showing of need.

Although unnecessary given the alternative reasons for denying the

motion, the court offers a summary of controlling law.  The principles are

axiomatic and require no analysis because Wallace has neither recited nor

discussed them.  The government is not obligated to provide a witness list.

*See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v.*

*Alessi*, 638 F.2d 466, 481 (2d Cir. 1980). The court has discretion to order a witness list, but should do so only on a showing of particularized need and materiality, and subject to the government's right to seek a protective order. *See United States v. Cannone*, 528 F.2d 296, 300-01 (2d Cir. 1975). Absent a showing of materiality, the government is not required to identify persons it does not intend to call as witnesses, *see United States v. Jordan*, 399 F.2d 610, 615 (2d Cir. 1968), which is especially true for grand jury witnesses whose identity is protected by rule, *see* FED. R. CRIM. P. 6(e). The government is not required to provide a detailed accounting of all police investigative work, nor disclose the identity of all police officers who worked in a case. *See, e.g.*, *Moore v. Illinois*, 408 U.S. 786 (1972).

Defendants have the burden of establishing need for disclosure of informants and cooperators. *See Cullen v. Margiotti*, 811 F.2d 698, 715-16 (2d Cir. 1987); *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983). To satisfy their burden, they must do more than speculate that disclosure is necessary for the defense. *See In re United States*, 565 F.2d 19, 23 (2d Cir. 1977). As to statements of trial witnesses, Rule 16 does not apply and the Jencks Act is the exclusive means for disclosure. *See In re United States*, 834 F.2d 283, 286 (2d Cir. 1987); *see also* FED. R. CRIM. P. 16 &

26.2.

Certainly, *Brady* and its progeny circumscribe these principles.

However, the government recognizes its obligation to disclose exculpatory

information, and has either already done so or agreed to do so should it

receive such information.

### E.    Bill of Particulars

Citing no authority other than FED. R. CRIM. P. 7(f), Wallace seeks an

order compelling the government to file a bill of particulars containing a

litany of evidentiary detail.  (*See* Wallace Mot. at ¶ 5(a)-(q), Dkt. No. 356.)

While the court has discretion to order a bill of particulars, *see United*

*States v. Chen*, 378 F.3d 151, 162-63 (2d Cir. 2004), it should do so only if

there is a demonstrated need to prepare a defense or avoid surprise at

trial.  *See United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)

(citations omitted).  Wallace has not shown need, and acquisition of

evidentiary detail is not the purpose of a bill of particulars.  *See id.*  A bill of

particulars is also unnecessary when the government provides extensive

discovery or supplemental oral and written disclosures.  *See Chen*, 378

F.3d at 163.  The government has done both.

Lastly, when a conspiracy is charged, the government need not

disclose the dates defendants are alleged to have joined the conspiracy, other known and unknown coconspirators, precise dates and locations when and where defendants assisted the conspiracy, and the means by which defendants furthered the conspiracy.  *See United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991).

Accordingly, the motion for a bill of particulars is denied.

## F.    Severance

Wallace seeks a FED. R. CRIM. P. 14 order severing his case for trial. He claims prejudice because the government's proof will focus on *Pinkerton* principles of coconspirator liability which will inevitably lead to antagonistic defenses.  (*See* Wallace Mot. at ¶¶ 20-22; *see also Pinkerton v. United States*, 328 U.S. 640 (1946).)  He also argues that multi-defendant drug cases involve varying degrees of proof regarding roles and culpability.

Joinder is proper because these defendants "are alleged to have participated in the same ... series of ... transactions constituting ..." a narcotics conspiracy.  FED. R. CRIM. P. 8(b).  This rule promotes judicial economy and efficiency by avoiding multiple trials and the possibility of inconsistent verdicts.  *See Zafiro v. United States*, 506 U.S. 534, 537

(1993); *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968).  As the Ninth Circuit has observed, a joint trial expedites "the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens who must sacrifice both time and money to serve upon juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once."  *Parker v. United States*, 404 F.2d 1193, 1196 (9th Cir. 1969).

While strong public policy reasons favor joinder, the court may sever if the failure to do so will cause substantial prejudice.  *See* FED. R. CRIM. P. 14; *see also United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980) (substantial prejudice).  The defendant must prove substantial prejudice, and whether he does so is a discretionary decision for the court.  *See id.*; *see also United States v. Lane*, 474 U.S. 438, 449 n.12 (1986).

That a defendant might have a better chance at acquittal in a separate trial is not prejudice.  *See United States v. Rucker*, 586 F.2d 899, 902 (2d Cir. 1978).  That the same evidence is admissible against all defendants militates against prejudice.  *See United States v. Arroyo-Angulo*, 580 F.2d 1137, 1144 (2d Cir. 1978).  Even where some evidence may be admissible against one defendant but not others, there is no per se

prejudice.  *See United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008).  When, however, evidence is so complex or confusing that jurors cannot make a reliable judgment about guilt or innocence, a severance is warranted.  *See Zafiro*, 506 U.S. at 539; *Rittweger*, 524 F.3d at 179. Naturally, the court can minimize the risk, as necessary, through limiting and general instructions directing the jury to consider the government's evidence separately as to each defendant.  *See Rittweger*, 524 F.3d at 179-80; *United States v. Amato*, 540 F.3d 153, 164 (2d Cir. 2008) (limiting instructions).  So too, the court has a continuing duty to grant separate trials anytime prejudice develops.  *See Rittweger*, 524 F.3d at 179.

As all parties agree, the culpability of these defendants will primarily hinge on a jury's evaluation of wiretap and seized evidence, all in the context of a conspiratorial agreement to distribute drugs in a confined geographical area over a short period of time.  The same evidence would be admissible at separate trials to establish the existence and parameters of the conspiracy, participation in the conspiracy, and accountability for conduct reasonably foreseen in furtherance of the conspiracy.  It would be incredibly burdensome on the public and the court to conduct separate trials, especially where the jury's focus is conspiracy and not discrete

narcotics sales, and where the evidence at all trials would be cumulative. Because Wallace has failed to establish substantial prejudice, his severance motion is denied.[5]

### G.    Prior Bad Acts and Convictions

Jordan moves to preclude the introduction of uncharged drug crimes during the government's direct case.  (*See* Jordan Mot., Dkt. No. 277:1; Memo. of Law at 13, Dkt. No. 277:2.)  While he argues that such evidence is inadmissible to prove his character or propensity to commit the charged crime, he acknowledges that such evidence may be admissible for other limited purposes.  (*See* Memo. of Law at 13, Dkt. No. 277:2.)

The government's response accurately recites the controlling legal principles, including those governing whether such evidence is admissible during its direct or rebuttal case.  (*See* Gov't Resp. at 90-92, Dkt. No. 360.) The parties clearly understand the parameters of FED. R. EVID. 404(b), and the court concurs with the government that a ruling must await the development of the trial evidence.  Accordingly, the motion is denied with leave to renew.

---

[5]The court recognizes its continuing obligation to evaluate prejudice, and will revisit the issue, if necessary, once it ascertains the number of defendants remaining for trial.

Wallace requests disclosure of 404(b) evidence which is a different issue than admissibility.  Rule 404(b) requires "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown," but the Order generally requires disclosure within fourteen days of arraignment.  (*See, e.g.*, Order at II(B)(3), Dkt. No. 11; *see also* Gov't Resp. at 92 (quoting Rule 404(b), but not the Order).)  In any event, the government has already complied and recognizes its continuing obligation to do so.  Accordingly, Wallace's motion is denied for the same alternative reasons that his earlier discovery motion was denied.

### H.    Additional Motions

Wallace and Santana seek permission to file additional motions.  The court will permit further motions only for good cause shown should future developments produce new material facts and issues.  They will be rejected if they rehash issues, or if they are based on facts and legal arguments which, through the exercise of due diligence, could have been included in the current motions.  The court will apply this discretionary standard to future motions.  Accordingly, the defendants' motion is denied with leave to renew.  *See United States v. Russell*, No. 5:08-CR-545, 2009 WL 466515, *8 (N.D.N.Y. Feb. 24, 2009).

16

III.    **The Wiretaps**

A.    **Background**

Between January 22 and April 27, 2007, the Honorable Patrick J.
McGrath, then Rensselaer County Court Judge, issued state wiretap
warrants and extensions that authorized interceptions over seventeen
cellular phones.  All warrants and extensions were supported by
applications of then Rensselaer County District Attorney Patricia DeAngelis
and by affidavits of New York State Police Investigator Robert Missenis.
Daniel Hanlon was then the Rensselaer County prosecutor assigned the
case, and he is now the prosecuting Assistant U.S. Attorney.  The relevant
warrants and extensions are as follows:

- "Target Phone 1":[6] Eavesdropping warrant issued January 22, 2007,
  on cell phone number 518-892-0477, used by Anthony Blackmore.
  This warrant was in effect from January 22, 2007 through February
  20, 2007, and the recordings gained thereunder were sealed on
  February 22, 2007.  (*See* Dkt. No. 360:2, 33.)

- "Target Phone 2": Eavesdropping warrant issued January 22, 2007,
  on cell phone number 347-401-5532, used by Charles Vasconcellos.
  This warrant was in effect from January 22, 2007 through February
  20, 2007, and the recordings gained thereunder were sealed on
  February 22, 2007.  (*See* Dkt. No. 360:2, 3, 33.)  The warrant's
  effective date was extended on February 16, 2007, from February 20,

_____

[6]The court references a particular warrant and its accompanying documentation by the
designation, "Target Phone '#'."

2007 through March 21, 2007, and the recordings gained thereunder were sealed on March 19, 2007. (*See* Dkt. No. 360:2, 4, 33.)

- "Target Phone 3": Eavesdropping warrant issued February 9, 2007, on cell phone number 518-961-0820, used by Timothy T. Wilson. This warrant was in effect from February 9, 2007 through March 10, 2007, and the recordings gained thereunder were sealed on March 13, 2007. (*See* Dkt. No. 360:2, 5, 33.) The warrant's effective date was extended on March 9, 2007, from March 9, 2007 through April 7, 2007; on April 5, 2007, from April 5, 2007 through May 4, 2007; and on April 27, 2007, from May 3, 2007 through June 1, 2007. The recordings gained under these extensions were sealed on April 5, 2007, May 3, 2007, and May 30, 2007, respectively. (*See* Dkt. No. 360:2, 6, 7, 8, 33.)

- "Target Phone 4": Eavesdropping warrant issued February 9, 2007, on cell phone number 718-701-7148, used by McKinsey Williams. This warrant was in effect from February 9, 2007 through March 10, 2007, and the recordings gained thereunder were sealed on March 13, 2007. (*See* Dkt. No. 360:2, 9, 33.)

- "Target Phone 5": Eavesdropping warrant issued February 9, 2007, on cell phone number 347-952-7520, used by Sherwin Maxwell. This warrant was in effect from February 9, 2007 though March 10, 2007, and the recordings gained thereunder were sealed on March 9, 2007. (*See* Dkt. No. 360:2,10,33.)

- "Target Phone 6": Eavesdropping warrant issued February 16, 2007, on cell phone number 518-364-2641, used by Timothy T. Wilson. This warrant was in effect from February 16, 2007 through March 16, 2007, and the recordings gained thereunder were sealed on March 19, 2007. (*See* Dkt. No. 360:2, 11, 33.) The warrant's effective date was extended on March 16, 2007, from March 16, 2007 through April 14, 2007; on April 5, 2007, from April 5, 2007 through May 4, 2007; and on April 27, 2007, from May 3, 2007 through June 1, 2007. The recordings gained under these extensions were sealed on April 5, 2007, May 3, 2007, and May 30, 2007, respectively. (*See* Dkt. No.

360:2, 12, 13, 14, 33.)

- "Target Phone 8": Eavesdropping warrant issued March 1, 2007, on cell phone number 518-708-1426, used by Sherwin Maxwell.  This warrant was in effect from March 1, 2007 through March 30, 2007, and the recordings gained thereunder were sealed on March 30, 2007.  (*See* Dkt. No. 360:2, 15, 33.)  The warrant's effective date was extended on March 30, 2007, from March 30, 2007 through April 28, 2007, and on April 27, 2007, from April 27, 2007 through May 26, 2007.  The recordings gained under these extensions were sealed on April 27, 2007, and May 30, 2007, respectively.  (*See* Dkt. No. 360:2, 16, 17, 33.)

- "Target Phone 9": Eavesdropping warrant issued March 1, 2007, on cell phone number 917-639-7070, used by William Taylor.  This warrant was in effect from March 1, 2007 through March 30, 2007, and the recordings gained thereunder were sealed on March 30, 2007.  (*See* Dkt. No. 360:2, 18, 33.)

- "Target Phone 10": Eavesdropping warrant issued March 9, 2007, on cell phone number 518-630-3904, used by Charles Vasconcellos.  This warrant was in effect from March 9, 2007 through April 7, 2007, and the recordings gained thereunder were sealed on April 5, 2007.  (*See* Dkt. No. 360:2, 19, 33.)  The warrant's effective date was extended on April 5, 2007, from April 5, 2007 through May 4, 2007, and on April 27, 2007, from May 3, 2007 through June 1, 2007.  The recordings gained under these extensions were sealed on May 3, 2007, and May 30, 2007, respectively.  (*See* Dkt. No. 360:2, 20, 21, 33.)

- "Target Phone 12": Eavesdropping warrant issued March 9, 2007, on cell phone number 914-361-0131, used by Sherwin Maxwell.  This warrant was in effect from March 9, 2007 through April 7, 2007, and the recordings gained thereunder were sealed on April 5, 2007.  (*See* Dkt. No. 360:2, 22, 33.)  The warrant's effective date was extended on April 5, 2007, from April 5, 2007 through May 4, 2007, and on April 27, 2007, from May 3, 2007 through June 1, 2007.  The recordings

19

gained under these extensions were sealed on May 3, 2007, and May 30, 2007, respectively.  (*See* Dkt. No. 360:2, 23, 24, 33.)[7]

Single Missenis affidavits supported multiple original warrants and extensions.  Therefore, for the parties, the Circuit, and unlikely readers of this tome who might benefit from a roadmap, the original warrants and extensions are further summarized chronologically by date of the supporting Missenis affidavit, and by target phone user and the moving defendants intercepted:[8]

- January 22 Missenis Affidavit (*See* Dkt. No. 360:3)

  Target Phone 1 Original Warrant: Blackmore phone; Vasconcellos intercepted.

  Target Phone 2 Original Warrant: Vasconcellos phone; Vasconcellos, Williams, and Maxwell intercepted.

- February 9 Missenis Affidavit (*See* Dkt. No. 360:5)

  Target Phone 3 Original Warrant: T. Wilson phone; Wallace intercepted.

  Target Phone 4 Original Warrant: Williams phone; Williams and

---

[7]This list adopts the government's designation of "relevant" warrants.  Its assessment is based on its interpretation of the defense motions—no easy task.  For instance, one motion seeks suppression of every conversation intercepted over every wire without regard to standing, an issue the court will later address.  In any event, there were a total of seventeen target phones subject to wiretap orders, and several were extended several times.  Therefore, the list is not exhaustive.

[8]As to the defendants intercepted, the summary reflects the extent to which the court could make that determination through government concession or proof by the defendant.

Maxwell intercepted.

Target Phone 5 Original Warrant: Maxwell phone; Maxwell intercepted.

- February 16 Missenis Affidavit (*See* Dkt. No. 360:4)

    Target Phone 2 Extension: Vasconcellos phone; Vasconcellos and Williams intercepted.

    Target Phone 6 Original Warrant: T. Wilson phone; Wallace intercepted.

- March 1 Missenis Affidavit (*See* Dkt. No. 360:15)

    Target Phone 8 Original Warrant: Maxwell phone; Maxwell and Santana intercepted.

    Target Phone 9 Original Warrant: Taylor phone; Maxwell intercepted.
- March 9 Missenis Affidavit (*See* Dkt. No. 360:6)

    Target Phone 3 Extension: T. Wilson phone; Wallace intercepted.

    Target Phone 10 Original Warrant: Vasconcellos phone; Vasconcellos intercepted.

    Target Phone 12 Original Warrant: Maxwell phone; Maxwell intercepted.

- March 16 Missenis Affidavit (*See* Dkt. No. 360:12)

    Target Phone 6 Extension: T. Wilson named; Wallace intercepted.

- March 30 Missenis Affidavit (*See* Dkt. No. 360:16)

    Target Phone 8 Extension: Maxwell phone; Maxwell and Santana intercepted.

- April 5 Missenis Affidavit (*See* Dkt. No. 360:7)

  Target Phone 3 Extension: T. Wilson phone; Wallace intercepted.

  Target Phone 6 Extension: T. Wilson phone; Wallace intercepted.

  Target Phone 10 Extension: Vasconcellos phone; Vasconcellos intercepted.

  Target Phone 12 Extension: Maxwell phone; Maxwell intercepted.

- April 27 Missenis Affidavit (*See* Dkt. No. 360:8)

  Target Phone 3 Extension: T. Wilson phone; Wallace intercepted.

  Target Phone 6 Extension: T. Wilson phone; Wallace intercepted.

  Target Phone 8 Extension: Maxwell phone; Maxwell and Santana intercepted.

  Target Phone 10 Extension: Vasconcellos phone; Vasconcellos intercepted.

  Target Phone 12 Extension: Maxwell phone; Maxwell intercepted.

  Citing state and federal law, the defendants advance multiple suppression arguments. For ease of analysis, those arguments are catalogued as follows: (1) probable cause: non-stale facts are insufficient to establish probable cause, or facts are derived from defective warrants and tainted; (2) minimization: interceptions were improperly minimized; and (3)

22

statutory violations:[9] in contravention of wiretap statutes, the warrants are defective because: (a) affidavits failed to establish the necessity of wiretapping in lieu of normal investigative techniques; (b) warrants and applications failed to adequately describe the nature and location of the facilities from which, or the place where the communications were to be intercepted; (c) applications failed to seek a specific time period for maintenance of the warrants; (d) timely progress reports were not submitted; (e) intercepted conversations were not timely sealed; (f) extension applications failed to adequately describe results obtained or explain the lack of results; (g) copies of the wiretap warrants or applications were not given to the defendants within fifteen days of arraignment; (h) warrants required Sprint-Nextel to disclose subscriber information for intercepted, non-published numbers without an underlying request in the warrant applications; (i) Albany County interceptions were improper because a Rensselaer County Judge issued the warrants; and (j) specific warrants were tainted by defective DeAngelis applications.

The court first turns to principles that directly impact the merits of these arguments; namely, choice of law, standing (suppression, derivative

---

[9]Hereinafter, the court refers to these collective arguments as "statutory violations."

evidence, and minimization), the *Leon* good faith rule (*see United States v. Leon*, 468 U.S. 897 (1984)), judicial deference, and waiver.

### B.    Choice of Law, Standing, Good Faith, Judicial Deference, and Waiver

#### 1.    Choice of Law

An essential preliminary question is whether state or federal law governs the analysis since this federal prosecution is premised on state wiretaps.  This Circuit and several district courts have definitively answered that question as to specific wiretap issues, but few courts have spoken broadly.  While doing so is risky, the court nevertheless concludes that federal law applies.[10]

The parties perceive–perhaps rightly so–that New York generally requires more rigorous and exacting compliance with its wiretapping statute than federal courts do with the federal equivalent.  While there are minor differences in the statutory language, they are similar since New York's statute was patterned on its federal counterpart.  *See United States v. Tortorello*, 342 F. Supp. 1029, 1032 (S.D.N.Y. 1972) (tracing federal and

---

[10]Without detailed analysis, other District Judges in this Circuit have held that federal law governs.  *See United States v. Gotti*, 42 F. Supp.2d 252, 259 n.1 (S.D.N.Y. 1999); *United States v. Moran*, 349 F. Supp.2d 425, 453-54 (N.D.N.Y. 2005); *United States v. Amanuel*, 418 F. Supp.2d 244, 248 (W.D.N.Y. 2005).

New York statutory history); *see also People v. Gallina*, 66 N.Y.2d 52, 56 (1985); *People v. Darling*, 95 N.Y.2d 530, 535 (2000).  Despite the similarity, there are often divergent interpretations by New York and federal courts.

The defendants argue that New York law applies and it requires suppression whenever there is a failure to strictly comply with any statutory requirement.  They universally cite two New York decisions holding that the state statute must be strictly construed.  *See, e.g.*, *Gallina*, 66 N.Y.2d at 57; *People v. Schultz*, 67 N.Y.2d 144, 148-49 (1986); *see also Darling*, 95 N.Y.2d at 535-36 ("[It is a] bedrock principle that there must be strict compliance with the provisions of New York's eavesdropping statute ...." (internal citations and quotation marks omitted)).  While New York courts often cite this bedrock principle, recent dicta suggests that strict compliance is softening, at least when applied to so-called, "technical violations."  Thus, in *Darling*, the Court of Appeals observed: "'[s]trict compliance' does not entail hypertechnical or strained obedience, nor is common sense its enemy." 95 N.Y.2d at 537.  Naturally, if required to apply state law, federal courts must predict whether strict compliance or strained obedience controls.

25

This Circuit's views appear to have fluctuated over time.  In the early 1970's, it stated that the admissibility of wiretapping evidence was governed by state law.  *See, e.g.*, *United States v. Manfredi*, 488 F.2d 588, 598 (2d Cir. 1973) (applying state minimization laws); *United States v. Rizzo*, 491 F.2d 215 (2d Cir. 1974) (same); *United States v. Marion*, 535 F.2d 697, 702 (2d Cir. 1976) ("If a state should set forth procedures more exacting than those of the federal statute, however, the validity of the interceptions and the orders of authorization by which they were made would have to comply with that test as well.").  Conceptually, this approach was later limited by *United States v. Sotomayor*, 592 F.2d 1219, 1225-26 (2d Cir. 1979), wherein the Circuit said, in dicta, that stricter state wiretap laws applied only where the purpose of the state law was to protect substantive privacy interests.  *See also United States v. Spadaccino*, 800 F.2d 292, 296-97 (2d Cir. 1986) (reciting *Sotomayor* rule).  More recently, the Circuit appears to have rejected this limited use, and moved towards a wholesale application of federal law.  *See, e.g.*, *United States v. Rowell*, 903 F.2d 899, 901-02 (2d Cir. 1990) (criticizing the reasoning of *Sotomayor* and applying federal probable cause standard articulated in *Illinois v. Gates*, 462 U.S. 213 (1983), to state wiretap warrant); *United States v.*

*Workman*, 80 F.3d 688, 695 n.4 (2d Cir. 1996) (recognizing that, as to constitutional conflicts, federal standards govern admissibility of state wiretap evidence in a federal prosecution despite conflict with *Sotomayor*).

The court realizes that its interpretation of the Circuit's later decisions is subject to dispute.  It also recognizes the distinction that could be drawn when the admissibility of state evidence involves federal constitutional analysis instead of state statutory analysis.  *See, e.g.*, *United States v. Miller*, 382 F. Supp.2d at 363-64 (discussing constitutional differences between federal and New York law); *cf., e.g.*, *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) (federal court in a non-federal case must apply state law).  Ultimately, however, the motivation for enacting both the federal and state statutes was to protect Fourth Amendment interests.  Thus, the court believes that federal constitutional interests, including federal interpretation of the wiretap statutes, should control.  So too, given different federal and state interpretations of similar statutory language, the court believes that a pragmatic policy promoting federal consistency is important.

Although the court has held that federal law controls, it will analyze the arguments under both federal and state law to the extent possible.

**2.    Standing**

27

Both New York and federal law provide that only an "aggrieved person" has standing to challenge the validity of a wiretap.  *See* 18 U.S.C. § 2518(10)(a); N.Y. CRIM. PROC. LAW § 710.20.  An aggrieved person is one who was a party to, overheard on, or recorded by an objectionable wiretap, or a person against whom the wiretap was directed (e.g., named in the warrant).  *See* 18 U.S.C. § 2510(11); N.Y. CRIM. PROC. LAW § 710.10(5).  Under federal and New York law, defendants must initially prove that they are aggrieved in order to establish their standing.  *See United States v. Magaddino*, 496 F.2d 455, 460 (2d Cir. 1974); *United States v. Mullen*, 451 F. Supp.2d 509, 526 (W.D.N.Y. 2006); *People v. Edelstein*, 98 Misc. 2d 1018, 1021-22 (N.Y. Sup. Ct. 1979) (stating as much in the context of a minimization challenge).

However, a defendant with standing cannot challenge a wiretap because of deficiencies in an earlier wiretap for which he had no standing. In other words, and adopting the government's characterization of this principle, there is no fruit of the poisonous tree.  *See United States v. Fury*, 554 F.2d 522, 526 (2d Cir. 1977); *United States v. Wright*, 524 F.2d 1100, 1102 (2d Cir. 1975); *United States v. Howard*, 400 F. Supp.2d 457, 474 n.7 (N.D.N.Y. 2005); *People v. Marans*, 127 A.D.2d 795, 796 (2d Dep't 1987).

Additionally, defendants challenging wiretaps on minimization grounds have no standing unless they first prove that they had a possessory or proprietary interest in the tapped phone or the residence in which the tapped phone is located. *See, e.g.*, *Fury*, 554 F.2d at 526. Interception alone does not confer standing to challenge minimization.

### 3.    *Leon* Good Faith

Suppression of evidence is not necessarily required if a wiretap warrant is issued without probable cause. Under *Leon*, evidence will not be suppressed if law enforcement relied upon the defective warrant in good faith. According to this good faith exception, evidence will be suppressed only if: (1) the issuing judge abandoned his detached, neutral role; (2) the agent was dishonest or reckless in preparing the supporting affidavit; or (3) the agent's reliance on the warrant was unreasonable. *Leon*, 468 U.S. at 922-25.

The Second Circuit has previously found *Leon* inapplicable where state wiretap evidence was obtained in violation of a state statute and the state's judicial decisions explicitly required suppression for such a violation. *See Spadaccino*, 800 F.2d at 295. Again, however, more recent decisions have implicitly rejected *Spadaccino*, instead embracing a wholesale

29

application of federal wiretap law.  *See, e.g.*, *Rowell*, 903 F.2d at 901-02; *Workman*, 80 F.3d at 695 n.4.  As such, district courts in this Circuit have applied *Leon* to state wiretap evidence.  *See, e.g.*, *United States v. Jackson*, 493 F. Supp.2d 592, 604 (W.D.N.Y. 2006) (collecting cases); *Gotti*, 42 F. Supp.2d at 259 n.1, 267 (same).   Accordingly, *Leon's* good faith exception applies.[11]

### 4.    Judicial Deference

In a case involving a wiretap application's recitation of "other investigative techniques," *see* 18 U.S.C. § 2518(1)(c) and N.Y. CRIM. PROC. LAW § 700.20(2)(d), the Circuit applied a "due deference" standard of review to an underlying district court decision.  *See United States v. Miller*, 116 F.3d 641, 663 (2d Cir. 1997) (citing *Torres*, 901 F.2d at 231).  Under this standard, the reviewing court refrains from making a de novo determination, and instead accords deference to the underlying sufficiency determination by deciding whether the facts are minimally adequate to support it.  *See id.*  The Circuit has recently reaffirmed this standard.  *See United States v. Concepcion*, – F.3d –, Docket No. 08-3785-cr, 2009 WL

---

[11]New York has not adopted *Leon*.  *See Miller*, 382 F. Supp.2d at 364 (citing *People v. Bigelow*, 66 N.Y.2d 417 (1985)).

2709295, at *3 (2d Cir. Aug. 31, 2009).[12]

The federal wiretapping statute authorizes New York prosecutors to seek wiretapping authorization from a judge of competent jurisdiction, *see* 18 U.S.C. § 2516(2), and Judge McGrath was such a judge. Accordingly, Judge McGrath's authorization decisions are afforded due deference.

### 5. Waiver

All suppression arguments that the defendants have specifically failed to raise are waived. *See, e.g.*, *DeLouya*, 2005 WL 3244173, at *7 (citing *Miller*, 382 F. Supp.2d at 364-65).

### C. The Wiretap Motions and the Defendants' Standing

As the court has already discussed in Section III. B. 2., *see supra* at pp. 28-29, the defendants must prove that they have standing to interpose their respective wiretap challenges. Given the current record, the standing analysis is exceedingly complex. Their burden is different depending on their challenge—i.e., probable cause, statutory violations, derivative taint, or minimization. Whether they have satisfied their burden is further obfuscated because some assert standing on the basis of interceptions

---

[12]The Circuit did not specifically so hold, instead relying on litigant concessions. Nonetheless, it applied the standard to the decision of the judge who issued an underlying warrant who was then effectively reversed by a reassigned, reviewing judge. *See Concepcion*, 2009 WL 2709295, at *3.

pursuant to warrants identified by date, but multiple warrants for multiple phones were issued on those dates. Their burden has been diminished by government concessions, but those concessions are limited.

Given the preceding caveat and as limited by individual or adopted arguments, the following defendants have standing to raise the following arguments as to the listed warrants and phones.[13]

### 1.    Vasconcellos

Vasconcellos has standing as follows: probable cause (Target Phone 2); and statutory violations (Target Phone 10, April 5 and 27 extensions).

### 2.    Jordan

Jordan challenges Target Phones 1, 2, and 10 on probable cause and statutory grounds.[14] He has failed to prove standing, and the government has made no concessions. Accordingly, his motion to suppress is denied.[15]

### 3.    Maxwell

---

[13]Any motion to suppress any warrant on the basis of any non-listed argument is denied because that defendant has failed to prove standing.

[14]He refers to them as the January 22 "0477 and 5532" warrants and the March 9 "3904" warrant. These references are to Target Phones 1, 2, and 10.

[15]Parenthetically, even if the court allowed Jordan to supplement his motion to establish his standing which is likely to exist at least as to Target Phone 10, the court would nonetheless deny the motion for the reasons recited hereinafter.

Maxwell seeks to suppress the use and derivative use of calls intercepted over all target phones because the government may decide to use undisclosed conversations at trial.  (*See* Maxwell Mot., Rench Affirmation at ¶ 11, Dkt. No. 340:2.)  He has failed to prove his standing as to all phones, and that aspect of his motion is denied.[16]

Otherwise, he has standing as follows: probable cause (Target Phone 2, 4, and 8 original warrants and Target Phone 8 extensions);[17] statutory violations (Target Phone 2, 4, 5, 8, 9, and 12 original warrants, and Target Phone 8 and 12 extensions); minimization (all Target Phone 8 and 12 warrants).

### 4.    Williams

Williams has standing as follows: probable cause and statutory violations (Target Phones 2 and 4); and minimization (Target Phone 4).

### 5.    Santana

Santana has standing as follows: probable cause and statutory

---

[16]The court will permit him to renew should the government do as he fears, and if he proves his standing.  Other defendants have adopted this argument, and their motions are also denied.

[17]In its Response, the government argues that Maxwell failed to challenge Target Phone 5.  (*See* Gov't Resp. at 24 n.8, Dkt. No. 360.)  As to probable cause, the court concurs because there is no probable cause argument for him to adopt.  Therefore, he has waived the argument.  As to statutory violations, he has standing and has not waived.  Furthermore, he has not established standing as to the February 16 Target Phone 2 extension.

violations (Target Phone 8).[18]

### 6.    Wallace

Wallace has standing as follows: probable cause and statutory

violations (Target Phones 3 and 6).[19]

## D.    Probable Cause

The court first recites probable cause principles, and then turns to a

probable cause analysis limited to those warrants for which standing has

been established, and further limited to *specific* arguments advanced.

### 1.    Probable Cause Principles

By statute and depending on the target phone, Missenis's affidavits

had to assert facts demonstrating that Vasconcellos (or the named target)

was engaged in drug trafficking with others, and that his or their drug

conversations would be intercepted over the phone specified in the

warrant.  *See* 18 U.S.C. § 2518(1)(a)-(b).  If satisfied that Missenis's facts

reflected a fair probability that he met the statutory goals, Judge McGrath

was authorized to issue the wiretap orders.  *See* 18 U.S.C. §§ 2518(3)(a)-

(b), (d), 2516(2) (narcotics trafficking); *see also* N.Y. CRIM. PROC. LAW §

---

[18]Santana also challenges minimization, but she has no standing to do so.

[19]Wallace also challenges minimization, but he has no standing to do so.

700.15(2), (3), (5).

Individuals are not necessarily the focus of the wiretap statute and the Fourth Amendment. Instead, the focus is whether criminal conversations will occur on specific phones. *See United States v. Ambrosio*, 898 F. Supp. 177, 183-85 & n. 8 (S.D.N.Y. 1995) (collecting cases); *see also Jackson*, 493 F. Supp.2d at 601; 18 U.S.C. § 2518(1)(c). Thus, probable cause arguments are misplaced when they focus on whether an affidavit establishes that unnamed or unidentified individuals were engaged in criminality. *See United States v. Figueroa*, 757 F.2d 466, 470-71 (2d Cir. 1985) (citing *United States v. Kahn*, 415 U.S. 143, 157 (1974)). Instead, *Gates* controls the focus, and "probable cause for a [wiretap] warrant is established if the 'totality-of-the-circumstances' indicate a probability of criminal activity." *Rowell*, 903 F.2d at 902 (quoting *Gates*, 462 U.S. at 230-32). This determination requires an "assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. As such, a finding of probable cause requires only "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the judge], including the 'veracity' and 'basis of knowledge' of

persons supplying hearsay information, there is a fair probability that

contraband or evidence of a crime will be" uncovered through the wiretap.

*Id.* at 238.

Under *Gates*' totality of the circumstances test, facts are viewed in

combination with one another, not in isolation.  *See United States v.*

*Sokolow*, 490 U.S. 1, 8 (1989).  While isolated facts may have innocent

explanations, a finding of criminality is not precluded when those facts are

viewed with others.  *See United States v. Fama*, 758 F.2d 834, 838 (2d Cir.

1985).  Officers may draw on their own experience, specialized training and

expertise to draw inferences and make deductions about the cumulative

information available to them that might elude the untrained eye.  *See*

*United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Ornelas v. United*

*States*, 517 U.S. 690, 699 (1996).  In a cooperative investigation,

knowledge of one officer is presumptively shared by all.  *See Illinois v.*

*Andreas*, 463 U.S. 765, 771 n.5 (1983).  Officers may rely on information

supplied by witnesses and private citizens, especially where the witnesses

and citizens have identified themselves.  *See Kerman v. City of New York*,

261 F.3d 229, 236 (2d Cir. 2001); *Lee v. Sandberg*, 136 F.3d 94, 103 (2d

Cir. 1997).  The reliability and veracity of informants and the basis of their

knowledge are important factors.  *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).  Unexplained cash and unusual travel may be cogent factors.  *See Sokolow*, 490 U.S. at 8.

Probable cause may be lacking if essential facts are stale.  "While there is no bright line rule for staleness, the facts in an affidavit supporting a ... warrant must be sufficiently close in time to the issuance of the warrant and the subsequent [wiretap] so that probable cause [exists at] the time of the [tap]."  *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (citations omitted).  "Facts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence."  *Id.* (citations omitted).

Because probable cause determinations deserve "great deference," this court's duty is "simply to ensure that the [state judge] had a substantial basis for concluding that probable cause existed."  *Gates*, 462 U.S. at 236, 238-39 (internal citations, quotation marks, and modifications omitted); *see also* Section III.B.4, *supra* at p. 30-31 (judicial deference).  So too, the *Leon* good faith rule applies.

### 2.     Target Phone 2 (Vasconcellos, Williams and Maxwell)

Separate Missenis affidavits supported the Target Phone 2 warrant and extension.  (*See* Missenis Jan. 22 Aff., Dkt. No. 360:3; Missenis Feb. 16 Aff., Dkt. No. 360:4.)  Vasconcellos argues that the first affidavit failed to recite non-stale facts establishing probable cause, an argument adopted by Williams and Maxwell.  Vasconcellos also argues that the extension was derivatively tainted by the original warrant, an argument adopted by Williams.[20]

From a practical and commonsense perspective, the first affidavit reasonably established that: Missenis was well trained and educated in narcotics enforcement; as a New York State Police veteran, he had twelve years of practical experience in narcotics enforcement and wiretapping as a member of the Community Narcotics Enforcement Team (CNET); and he was an expert in the methods and operations of drug businesses and conspiracies.  Given his expertise, he knew that drug dealers running a drug business have: suppliers, customers and distribution channels for drugs and money; associates with criminal records, often including drug convictions, who assist the drug business in various ways; locations that

_____

[20]As earlier held, all three have standing to challenge the original warrant.  Maxwell has no standing to challenge the extension on probable cause grounds.

serve as repositories for drugs, drug records, money, financial records, and other essential drug distribution items such as police scanners, guns, and narcotics packaging material; telephones used to cryptically communicate with suppliers, associates, and customers; telephone activity reflecting inordinate numbers of conventional and push-to-talk calls; drug distribution locations that are typically frequented by customer visits of short duration; and routine methods of conducting business such as posting bail for arrested associates, and using associates' vehicles to transport drugs and money by other non-owner associates.  Missenis also expertly opined that incriminating evidence of a drug organization would be intercepted over phones used by members to run their business, and specified the evidence he believed would be gathered.

The affidavit then recited a series of facts which, when coupled with Missenis's expertise, demonstrated a fair probability that Vasconcellos and named associates were involved in a drug distribution conspiracy, and that incriminating conversations would be intercepted over Vasconcellos's Target Phone 2.  Again, viewed with practicality and commonsense, the facts established: (1) Vasconcellos and four named associates had prior drug arrests and convictions; (2) on March 19, 2004, a reliable informant

said that she[21] could purchase cocaine from Vasconcellos who was selling

it from a Troy, New York location known by the police to be used for

repetitive cocaine sales;[22] (3) under police supervision, she then bought

cocaine from Vasconcellos; (4) twelve days later, the police executed a

search warrant at that location, and seized cocaine, drug packaging

material, a police scanner and $860 cash (all evidence of a drug

distribution business), and arrested Vasconcellos and Watson (his girlfriend

and current associate) for drug possession; (5) on June 11, 2004,

Vasconcellos and Watson were operating a vehicle owned by Williams, a

two-time, drug convicted felon and current Vasconcellos associate, and

$13,200 cash was seized after Vasconcellos provided a suspicious

explanation; (6) on December 13, 2005, a second reliable informant stated

that she could purchase cocaine from Vasconcellos at another Troy

location known by the police as an established drug sale locale, and she

thereafter did so under police supervision; (7) after two subsequent cocaine

purchases, the police executed a search warrant at that site on January 18,

---

[21]The affidavit does not identify confidential sources as "he" or "she." The court uses the female pronoun for ease of reference.

[22]The reliability of all informants is fully supported by facts in the affidavit, including the bases for their knowledge, their past reliability, corroborating police observations, and the fact that the information disclosed constituted declarations against their penal interests.

2006, seized drugs, weapons, and narcotics packaging, and arrested Whitaker, a current Vasconcellos associate; (8) when arrested, Whitaker stated that he was employed at a clothing store which, according to business records, Vasconcellos owned; (9) a reliable third informant stated that she could purchase cocaine from coconspirator Blackmore, and did so under police supervision on July 19, August 17, September 18, October 2, and December 6, 2006; (10) from July 2006 to January 2007, physical surveillance of the Vasconcellos and Blackmore residences revealed numerous occasions on which individuals stopped, entered the residences, and stayed for short durations, all consistent with a drug distribution business; (11) the preceding surveillance also revealed repetitive contact between Vasconcellos and Reid, a current associate, and isolated contact between Vasconcellos and Blackmore, a current associate; (12) on September 26, 2006, Missenis obtained pen register authorization for Blackmore's Target Phone 1; (13) on November 3, 2006, a reliable fourth informant stated that she could purchase up to two ounces of cocaine from Vasconcellos at his Troy residence; (14) on November 16, 2006, Missenis learned from the Blackmore pen register that Target Phone 2 belonged to Vasconcellos, and on December 8, he obtained a pen register for that

phone; (15) on January 18, 2007, Whitaker was arrested for two felony drug sales; (16) from September to November 2006, and from December 2006 to January 2007, pen register analysis reflected repetitive telephone contact between drug associates Vasconcellos, Balckmore, Whitaker, and Reid; (17) on January 19, 2007, Vasconcellos posted bail for Whitaker after Whitaker's arrest for two felony drug sales;[23] and (18) from December 10, 2006 until January 21, 2007, there were more than 1,600 calls and 5,100 short in duration, push-to-talk calls over Vasconcellos's Target Phone 2, all evidence of a drug dealer using his phone to engage in a drug distribution business.

Thus, the sole *Gates* question is whether, objectively evaluating all of Missenis's facts and expert conclusions in a practical, commonsense manner, it was fairly probability that Vasconcellos was currently engaged in drug trafficking, and that conversations related to his drug business would be intercepted over Target Phone 2?  The answer to that question is, "Yes."

Technical niceties and draftsmanship do not govern the analysis, nor

---

[23]As supported by Missenis's expert opinion, it is reasonable to conclude that Watson, Williams, Whitaker, Reid, and Blackmore were Vasconcellos drug associates, and participated in his drug distribution business at various times from 2004 and thereafter.

does an isolated view of the facts.  Given Missenis's expertise and the recited facts, it is reasonable to conclude that at least by early March 2004, Vasconcellos was a drug dealer with a drug distribution business.  Less than ten weeks after his March 31, 2004 drug arrest, he and his drug associate, Watson, were stopped while operating the car of another drug associate and convicted drug felon, Williams, under suspicious circumstances consistent with drug distribution activities.

A year and one-half later from December 2005 to January 2006, the facts fairly demonstrate that he had an ongoing drug business at a new Troy location, and was assisted by his associate, Whitaker.  An actual cocaine purchase from Vasconcellos was monitored by the police.  Given his 2004 drug arrest, it is arguable that the 2005-2006 business was separate from his 2004 business, although the post-arrest money seizure from his associate's vehicle suggests continuity.  Regardless of whether the facts truly reflect continuity of the 2004 and 2005 drug businesses, they certainly reflect continuity of purpose; namely, the operation of a cocaine trafficking business.

From July 2006 to January 2007, the facts reasonably demonstrate that Vasconcellos and Blackmore were involved in a drug business.

43

Specifically, they establish that as of November, Vasconcellos was selling multi-ounces of cocaine from his Troy residence.  Physical surveillance at his residence during the seven-month, July-to-January period corroborated his business, as it also corroborated his repetitive contact with his drug associates.  From November 2006 to January 2007, pen register analysis of Target Phones 1 and 2 also corroborated repetitive contact between Vasconcellos and his drug associates, and provided evidence of a continuing drug business (e.g., more than 1,600 calls and 5,100 short in duration, push-to-talk calls on his Target Phone 2).  Lastly, Vasconcellos posted bail on January 19, 2007, for Whitaker after Whitaker's arrest on two felony drug sales.

Collectively, these facts and expert conclusions demonstrate a fair probability that Vasconcellos was a drug dealer who, assisted by his associates, operated a drug business in Troy beginning as early as March 2004, and likely continuing through January 2007.  Regardless of whether the old drug business continued through January 2007, the expert conclusions and facts provide a clear probability that Vasconcellos's continuity of purpose had begun again by July 2006, and that his drug business was in operation when Missenis prepared his first affidavit on

January 22, 2007.

The facts and Missenis expert conclusions also reflect a fair probability that Vasconcellos used Target Phone 2 in his drug business, and that incriminating conversations would be intercepted over that phone. Continuity is the hallmark of a drug trafficker and his drug business, and the facts are not stale.  Vasconcellos's argument regarding innocent explanations for isolated facts is unpersuasive because facts are not viewed in isolation.  In their totality, the recited facts and expert opinions support a de novo determination by this court that probable cause was established by the Missenis January 22 affidavit supporting the Target Phone 2 warrant.

The court also denies the motion for two alternative reasons.  First, Judge McGrath's probable cause determination is accorded due deference. Second, the *Leon* good faith rule applies since there is no evidence that Judge McGrath abandoned his neutral role, that Missenis was dishonest or reckless in preparing his affidavit, or that Missenis's reliance on the warrant was unreasonable.

Since probable cause supported the original warrant, the intercepted conversations are not tainted and the motions to suppress interceptions

over the Target Phone 2 extension because of derivative taint are denied.[24]

> **2.    Remaining Probable Cause Arguments: Target Phones 3 and 6 (Wallace), 4 (Williams and Maxwell), and 8 (Maxwell and Santana).**

Given the court's Target Phone 2 probable cause conclusions, it can collectively analyze the specific arguments of the remaining defendants.

Wallace challenges Target Phones 3 and 6, Williams and Maxwell challenge Target Phone 4, and Maxwell and Santana challenge Target Phone 8.  The original warrants or extension orders for these phones were supported by the Missenis February 9, February 16, March 1, March 9, March 16, March 30, April 5, and April 27 affidavits.  (S*ee* Dkt. Nos. 360:5, 4, 15, 6, 12, 16, 7, and 8, respectively.)

Wallace's Target Phone 3 and 6 arguments are difficult to decipher. (*See* Wallace Mot. to Suppress Wiretaps at 46-51, Dkt. No. 356.)  Other than "Orwellian fears" about wiretapping, it appears that he questions informant veracity and whether Missenis's factual allegations reflect "suspicions" instead of "criminality."  (*See id.*)

Wallace's informant argument has no merit.  There is no informant

---

[24]As the court finds hereinafter, there were no statutory or minimization violations that tainted any warrant, including the Target Phone 2 original warrant.

information recited in the Target Phone 3 and 6 affidavits.  Accordingly,

Wallace's motion to suppress on this basis is denied.

As for suspicion, Wallace appears to focus on whether the facts

establish his criminality.  That focus is misplaced since the issue is whether

there was a fair probability that incriminating conversations would be

intercepted over Target Phones 3 and 6, both of which belonged to

Timothy Wilson.  Thus, the proper focus is whether there was probable

cause to believe that Wilson was involved in Vasconcellos's drug

conspiracy and whether incriminating conversations would be intercepted

over his two phones.  Even a casual review of the Missenis affidavits

supporting the Target Phone 3 and 6 warrants and extensions, which

incorporated earlier affidavits, reveals overwhelming factual support for the

conclusion that Wilson was a Vasconcellos drug coconspirator, and that he

used his phones to engage in criminal conversations.  (*See, e.g.*, Missenis

Feb. 9 Aff. at ¶ 7 p. 6, ¶ 2 pp. 8-9, ¶¶ 4-5 pp. 9-10, ¶¶ 1-6 pp. 10-13;

Missenis Feb. 16 Aff. at ¶ 2 p. 3, ¶ 7 p. 6-7, ¶¶ 4-10 pp. 11-15 (cocaine

transactions with Vasconcellos and use of phone).)[25]  It is simply irrelevant

---

[25]The court need not rehash all of the facts supporting this conclusion.  The government has done so in its response, and Wallace has focused on the wrong issue.  Furthermore, the court has reviewed the affidavits and makes a de novo determination that probable cause existed both as to Wilson's participation in the Vasconcellos drug conspiracy and Wilson's

whether probable cause existed as to Wallace, personally.

While the court has made a de novo determination that probable cause existed, it alternatively accords due deference to Judge McGrath's determination, and finds that the *Leon* good faith rule applies. Accordingly, the motions to suppress because the warrants for Target Phones 3 and 6 lacked probable cause are denied. Furthermore, probable cause supported earlier warrants, and conversations were not tainted. Therefore, the motion to suppress because of derivative taint is denied.

As to Williams's Target Phone 4, he solely argues, as does Maxwell therefore by adoption, that the facts establish no criminality on Williams's part.[26] Williams states that he was intercepted over Target Phone 2 on at least five occasions, that those five calls are "nebulous," that they form the basis for the Target Phone 4 wiretap, (*see* Missenis Feb. 9 Aff., Dkt. No. 360:5), and that they fail to support the warrant.

The Missenis February 9 affidavit incorporated his January 22 Target Phone 2 affidavit which the court has already concluded established probable cause to believe that Vasconcellos was using Target Phone 2 in

---

phone use.

[26]Obviously, this argument makes little sense insofar as Maxwell is concerned which is precisely why a motion to join without particularization makes little sense.

his drug business.  Untainted interceptions from Target Phone 2 were attached to the February 9 affidavit, and they corroborate this court's earlier de novo probable cause conclusion.  Also, newly asserted facts overwhelmingly establish that Vasconcellos was a drug dealer, and attached transcripts of intercepted conversations establish that he used his phone to discuss supply and distribution activities.[27]

Through telephone records and Target Phone 2 interceptions, Missenis knew that Williams used Target Phone 4.  Williams, who had at least two prior drug felony convictions and had served time in state prison, was specifically identified as a Vasconcellos associate in the original Target Phone 2 affidavit.  Additionally, and based on his narcotics expertise and despite Williams's nebulousness claim, Missenis reasonably opined the following in his February 9 affidavit: that on January 31, 2007, after twice speaking on their respective phones, Williams packaged cocaine for Vasconcellos (*see* ¶ 8 p. 14, Dkt. No. 360:5); that on February 3, 2007, after three calls over their respective phones, Vasconcellos delivered cocaine to Williams which Williams intended to sell (*see id.* at ¶ 9 pp. 14-

_____

[27]Again, the facts supporting these de novo conclusions are self-evident, and it is unnecessary to recite them in detail.

15); and that other identified interceptions reflect that Williams was supplied cocaine for resale by Vasconcellos in amounts from 1/4 ounce to 100 grams (*see id.* at ¶ H p. 20.)

Missenis's expert conclusions were entirely reasonable, and these conclusions and facts establish a fair probability that Williams participated in Vasconcellos's drug business during January and February 2007, that Williams used Target Phone 4 in that drug business, and that incriminating conversations would be intercepted over that phone.

While the court has made a de novo determination that probable cause existed, it alternatively accords deference to Judge McGrath's determination, and finds that the *Leon* good faith rule applies.  Accordingly, the motions to suppress conversations intercepted over Target Phone 4 are denied.  Furthermore, since probable cause to issue the preceding warrants existed, interceptions are not tainted and motions to suppress because of derivative taint are denied.

Santana, and Maxwell through adoption of Santana's arguments, seek to suppress conversations intercepted over the Target Phone 8 warrants and extensions which focused on Maxwell's phone.  The Missenis March 1, March 30, and April 27 affidavits supported these warrants.  (*See*

Missenis Affs., Dkt. No. 360:15-17.)

Santana correctly recites the probable cause conclusions essential to a valid wiretap order, but her subsequent analysis is flawed.  (*See* Memo. of Law at 16-17, Dkt. No. 343:3.)  Thus, she correctly argues that the facts must establish a fair probability that the targeted phone will reveal incriminating conversations, but she then attacks the underpinnings of Target Phones 1 and 2, claiming that those warrants tainted Target Phone 8.  However, she has no standing to attack the earlier warrants, and derivative taint is not grounds to suppress without such standing.  In any event, the court has already found that probable cause supported the warrants for Target Phone 2.[28]

Accordingly, the Santana and Maxwell motions to suppress on the basis of tainted probable cause are denied.


**E.    Minimization**

As for motions to suppress because interceptions were improperly minimized, only Williams as to Target Phone 4 and Maxwell as to Target

---

[28]While it has been unnecessary to consider Blackmore's Target Phone 1, both Target Phones 1 and 2 were supported by a single Missenis affidavit which established probable cause for both warrants.

Phones 8 and 12 have standing.  Accordingly, all other motions seeking to suppress on minimization grounds are denied.

Without factual support, both Williams and Maxwell argue that all calls were intercepted and no minimization occurred.  (*See* Williams Mot., Memo. of Law at 9-19, Dkt. No. 342:3; Maxwell Mot., Rench Affirmation at 15-16, 24-25, Dkt. No. 340:2, and Memo. of Law at 6, Dkt. No. 340:5.) Maxwell seeks a hearing to establish a factual basis for his claim.  (*See* Memo. of Law at 10, Dkt. No. 340:5.)  These unsubstantiated claims are contradicted by pre-motion discovery provided by the government.  (*See* Gov't Resp. at 69-70, Dkt. No. 360 (providing defendants with copy of audio recording of all calls and interception log that reflected, *inter alia*, time and duration of calls and times during which minimization occurred).)

Both New York and federal law require that eavesdropping "shall be conducted in such a way as to minimize the interception of communications ... not otherwise subject to" the eavesdropping warrant.  *See* 18 U.S.C. § 2518(5); N.Y. CRIM. PROC. LAW § 700.30(7).  In compliance with that statutory directive, all of Judge McGrath's wiretap orders required the police to implement them "in a manner designed to minimize the interception of non-relevant and privileged communication(s) ...."  (*See,*

*e.g.*, Target Phone 2 Wiretap Order at 2, Dkt. No. 360:3.)  Thus, the court

must determine whether the monitoring agents' actions were reasonable

under the circumstances.  *See Scott v. United States*, 436 U.S. 128, 137

(1978); *see also Gotti*, 42 F. Supp.2d at 268 ("[This] requires an

assessment of the reasonableness of the interceptions in light of the

purpose of the wiretap and the totality of the circumstances.") (citation

omitted).

Under either federal or state law, the government has the initial prima

facie burden of showing that it complied with minimization requirements;

namely, that monitoring agents had reasonable procedures in place that

were designed to minimize non-pertinent calls.  *See Rizzo*, 491 F.2d at 217

n.7.  If the government satisfies its prima facie burden, the burden shifts to

the defendant to show that "a substantial number of non-pertinent

conversations [have] been intercepted unreasonably."  *United States v.*

*Cirillo*, 499 F.2d 872, 881 (2d Cir. 1974); *see also United States v.*

*Funderburk*, 492 F. Supp.2d 223, 245-46 (W.D.N.Y. 2007) (collecting

cases).

The government's prima facie burden is satisfied by proof of

reasonable minimization measures, such as: "1) maintenance of monitoring

logs, 2) judicial supervision of the progress of the surveillance, 3) supervision by the prosecutor, and 4) requiring all monitoring personnel to read the minimization instructions, court orders and applications, and the posting of these documents at the monitoring location." *Gotti*, 42 F. Supp.2d at 268 (citation omitted).

In its response, the government has established that the following minimization procedures were employed: (1) the Rensselaer County District Attorney prepared written instructions which this court has reviewed and finds reasonable (*see* Written Minimization Instructions, Dkt. No. 360:29);[29] (2) Assistant District Attorney Hanlon gave oral minimization instructions to all monitoring agents, and required them to read the written minimization instructions, the wiretap orders, the applications of then District Attorney DeAngelis, and the respective Missenis affidavits (*see* Hanlon Aff. at ¶ 9, Dkt. No. 360:30; Minimization Attachment, Dkt. No. 360:29); (3) all monitoring agents were required to acknowledge by their signature that they received the minimization instructions and read the accompanying documentation referenced in the preceding sentence, and

---

[29]Presumably, the instructions were prepared by then Assistant District Attorney Hanlon, but his affidavit does not definitively establish that fact. (*See* Hanlon Aff., Dkt. No. 360:30.)

the written instructions and wiretap documents were posted at the monitoring location (*see* Minimization Attachment at 2, Dkt. No. 360:29; Hanlon Aff. at ¶ 9, Dkt. No. 360:30); (4) monitoring agents prepared weekly progress reports containing minimization information, and submitted them to Judge McGrath for his review (*see* Minimization Attachment, Dkt. No. 360:31-32; Hanlon Aff. at ¶ 9, Dkt. No. 360:30); and (5) Judge McGrath was kept abreast of the progress of each wiretap application through facts included in the succeeding Missenis affidavits.

Based upon the foregoing, the government has satisfied its prima facie burden of demonstrating reasonable minimization procedures. This is particularly true given the scope of the narcotics conspiracy that was the subject of the wiretap orders, the number of coconspirators involved, and the breadth of the incriminating conversations that the warrants targeted. *See Scott*, 436 U.S. at 140. So too, the defendants have failed to show that non-pertinent conversations were intercepted. Given their failure, they are not entitled to a hearing to rectify the absence of a factual basis for their motion. The court reaches these conclusions under both federal and state law. *See United States v. Variano*, 550 F.2d 1330, 1336 n.10 (2d Cir. 1977) (citing *United States v. Principie*, 531 F.2d 1132, 1142 n.12 (2d Cir.

1976)).

Accordingly, the motions to suppress on the grounds of improper

minimization are denied.

### F.     The Statutory Violations

The defendants statutory violation arguments challenge the warrants

on the grounds that they did not strictly adhere to New York's wiretap

statute.  The court has already held that federal law applies.  *See* Section

III.B.1., Choice of Law, *supra* at pp. 24-28.  It now turns to the specific

arguments.[30]

### 1.     Necessity: Other Investigative Techniques

Maxwell, Williams, Santana, and Wallace challenge Target Phones 2-

6, 8-9, and 12 on this statutory basis.

Both New York and federal law require that wiretap applications

present a statement indicating that normal investigative techniques have

been tried and failed, reasonably appear unlikely to succeed, or are too

dangerous to employ.  *See* 18 U.S.C. § 2518(3)(c); N.Y. CRIM. PROC. LAW §

700.20(2)(d).  Neither statute requires the exhaustion of all conceivable

---

[30]Regardless of standing, the same arguments apply to all warrants, and the court's rulings would be the same.  Moreover, since the court subsequently finds that there were no statutory violations, there is no derivative taint.

means of investigation.  Simply because some means is theoretical does not mean that it is likely.  *See Concepcion*, 2009 WL 2709295, at *3 (citation omitted); *see, e.g.*, *People v. Moon*, 168 A.D.2d 110, 112-13 (3d Dep't 1991) (citations omitted).  "'[Rather, the statutes] only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods." *Concepcion*, 2009 WL 2709295, at *3 (quoting *United States v. Diaz*, 176 F.3d 52, 111 (2d Cir. 1999)); *see, e.g.*, *Moon*, 168 A.D.2d at 112-13 (citations omitted).  The purpose of the requirement is to strike a balance between citizens' privacy rights and the needs of law enforcement by ensuring that wiretapping is not used when traditional investigative techniques would suffice.  *See Concepcion*, 2009 WL 2709295, at *3.

"[W]hether a normal investigative method has been exhausted must be tested in a practical and common sense manner." *Diaz*, 176 F.3d at 111 (citation omitted); *see also People v. Gallina*, 95 A.D.2d 336, 340 (2d Dep't 1983).  When doing so, the court must remain mindful of the underlying investigative facts.  For instance, large scale narcotics conspiracies or other unique factors may provide a rational basis to believe

that traditional investigative techniques cannot be used. *See Concepcion*, 2009 WL 2709295, at *4; *United States v. Robledo*, 254 Fed. Appx. 850 (2d Cir. 2007). Ultimately, the court must decide if the facts in the warrant applications were minimally adequate to support Judge McGrath's determination—i.e., whether his determination should be afforded due deference. *See Concepcion*, 2009 WL 2709295, at *3; *Torres*, 901 F.2d at 231.

Citing *United States v. Carneiro*, 861 F.2d 1171, 1183 (9th Cir. 1988) and *United States v. Abascal*, 564 F.2d 821, 826 (9th Cir. 1977), Maxwell argues that the Target Phone 2 warrant was defective because he was not named, and because the Missenis supporting affidavit failed to demonstrate that other investigative techniques would not work against him personally. This argument is rejected. The correct question is whether Missenis's affidavit adequately described why other investigative techniques were unavailable to gather the incriminating evidence against Vasconcellos as authorized by the tap on Target Phone 2. Neither *Carneiro* nor *Abascal* hold to the contrary because those cases focused on individual wiretap orders, not unnamed individuals like Maxwell. *See Carneiro*, 861 F.2d at 1182; *Abascal*, 564 F.2d at 825-26. Thus, as long as

the affidavits were minimally sufficient to apprize Judge McGrath of the
difficulties inherent in the use of normal law enforcement methods as to the
named target and telephone, they were sufficient.

As to Target Phones 5, 8, and 12 where Maxwell was the named
target, and as to the generic arguments others have raised as to target
phone warrants where they were named or not, the Missenis affidavits
reasonably recited facts sufficient to support Judge McGrath's decision
which is accorded due deference.  Once again, practicality and
commonsense governs, especially in light of the expansiveness of
Missenis's authorized wiretap goals; namely, identification of the methods
and means of Vasconcellos's drug business, the sources of supply and
distribution, and the identification of coconspirators.  Having reviewed the
relevant Missenis affidavits de novo and for the additional reasons recited
by the government (*see* Gov't Resp. at 13-17, 23-24, 27-28, 30-31, 34, 38,
43, 46-47, 52, 55-56, and 61, Dkt. No. 360), the court concludes that each
warrant was supported by facts minimally sufficient to support Judge
McGrath's conclusion that traditional investigative techniques would not
work.

Accordingly, the motions to suppress on this basis are denied

pursuant to both federal and state law.

## 2.    Nature and Location of Interception Facilities

Maxwell, Williams, Santana, and Wallace challenge Target Phones 2-6, 8-9, and 12, arguing that the warrants and applications failed to provide "a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted" as required by N.Y. CRIM. PROC. LAW §§ 700.20(2)(b)(ii) and 700.30(3).  They cite no authority indicating that non-compliance with these provisions mandates suppression in a federal prosecution.  Additionally, each warrant and application provided a unique number corresponding to the Target Phone to be tapped and provided subscriber/user information including address, where available.  Little more is reasonably required when dealing with highly mobile cellular phones.  *Cf. Darling*, 95 N.Y.2d at 536 (finding identification of land-line phone to be tapped and its address sufficient to satisfy §§ 700.20(2)(b)(ii) and 700.30(3)).  Insofar as defendants contend that New York law further required that warrants and applications describe the means, manner, and cellular equipment through which communications would be intercepted, the argument is rejected.  Simply stated, no such requirements appear in the provisions cited by the defendants.

No federal authority supports the motions, and they are denied.

Alternatively, to the extent N.Y. CRIM. PROC. LAW §§ 700.20(2)(b)(ii) and

700.30(3) are relevant, they were fully complied with, and the motion is

denied.  *See Darling*, 95 N.Y.2d at 537 ("'Strict compliance' does not entail

hypertechnical or strained obedience, nor is common sense its enemy.").

### 3.    Time Limitation in Warrant Applications

Maxwell, Williams, Santana, and Wallace challenge Target Phones 2-

6, 8-9, and 12, arguing that the warrant applications "failed to request a

specific time period for which the eavesdropping warrant [on these phones]

would be maintained."  This argument is rejected.

Under 18 U.S.C. § 2518(1)(d), wiretap applications must contain "a

statement of the period of time for which the interception is required to be

maintained."  *See also* N.Y. CRIM. PROC. § 700.30(6).  Here, each warrant

application concluded: "Wherefore, I respectfully request that an

Eavesdropping Warrant to include a Pen Register and Trap and Trace

device *in the form annexed be issued*."  (*See, e.g.*, Gov't Exs. 2-26, Dkt.

No. 360:3-27 (emphasis added).)  Every order annexed to the applications

authorized eavesdropping until the objectives of the investigation were

satisfied or thirty days elapsed from the signing of the order, which ever

occurred first.  Thus, because the wiretapping orders provided the time period for which wiretapping was authorized, the incorporation by reference of such orders in the wiretapping applications satisfied N.Y. CRIM. PROC. LAW § 700.30(6) and 18 U.S.C. § 2518(1)(d).  *See* also *Darling*, 95 N.Y.2d at 537 ("'Strict compliance' does not entail hypertechnical or strained obedience, nor is common sense its enemy.").  Therefore, under both federal and state law, the motions are denied.

### 4.    Progress Reports

Maxwell, Williams, Santana, and Wallace challenge Target Phones 2-6, 8-9, and 12, arguing that Judge McGrath was not provided weekly reports showing what progress had been made toward the wiretap objectives, violating N.Y. CRIM. PROC. LAW § 700.50(1).  This argument is rejected because the government has established that DeAngelis did forward weekly progress reports to Judge McGrath.  (*See* Gov't Ex. 30A, B, Dkt. No. 360.)

Accordingly, there is no factual predicate for the motions and they are denied under both federal and state law.

### 5.    Sealing of Intercepted Conversations

Maxwell, Williams, Santana, and Wallace challenge Target Phones 2-

6, 8-9, and 12, arguing that discs which contained recordings of intercepted conversations were not timely or properly sealed.

Federal sealing requirements apply in federal prosecutions regardless of whether the relevant wiretap order was issued by a state court. *See Sotomayor*, 592 F.2d at 1225-26. Under 18 U.S.C. § 2518(8)(a), recordings of intercepted conversations must be judicially sealed "[i]mmediately upon the expiration of the period of the order, or extensions thereof." Where eavesdropping warrants are extended, recordings may be sealed at expiration of the last extension. *See Fury*, 554 F.2d at 532-33. Recordings sealed within one or two days of the expiration of the wiretap order are considered to have been "immediately" sealed. *See United States v. Vazquez*, 605 F.2d 1269, 1278 (2d Cir. 1979). Longer sealing delays do not mandate automatic suppression. *See United States v. Gallo*, 863 F.2d 185, 193 (2d Cir. 1988). "[R]ather, suppression is required when the government cannot satisfactorily explain the delay." *Id.* (citations omitted). "The government's explanation must be weighed against such factors as the length of delay, the absence of good faith, the time needed for administrative processing, and the prejudice to the defendant." *Id.* (citations omitted).

Here, the recordings for Target Phones 2 and 4 were sealed three days after the wiretap was terminated (Phone 2) or the wiretap extension expired (Phone 4).  Similarly, the recordings for Target Phones 3, 6, 8, and 12 were sealed six days after the wiretaps for these phones were terminated.[31]  As such, the government concedes that the recordings for these phones were not sealed "immediately" under 18 U.S.C. § 2518(8)(a), and it is therefore necessary to examine the government's justification for this delay.

The government explains that the failure to immediately seal some recordings was due to an erroneous belief by the Rensselaer District Attorney's Office "that as long as the discs containing the recordings were removed and immediately sealed at the expiration of the specific eavesdropping order and then were officially presented for sealing before the issuing Judge, than [the requirements of] the statute were met."  (*See* Gov't Ex. 32, Dkt. No. 360.)  This explanation is satisfactory because it demonstrates that the failure to timely seal was not the result of some improper motive.  Additionally, the delays were not exceedingly long when

_____

[31]The recordings for Target Phones 5 and 9 were sealed a day after the wiretaps on these phones were terminated.  Thus, these recordings were "immediately" sealed.

compared to other cases in which suppression was denied. *See, e.g.*, *United States v. Rodriguez*, 786 F.2d 472, 476-77 (2d Cir. 1986) (14 days); *United States v. Scafidi*, 564 F.2d 633, 641 (2d Cir. 1977) (7 days). Most importantly, the failure to timely seal resulted in no prejudice to the defendants, as Investigator Missenis has attested that no interceptions occurred on the target phones after the wiretaps were terminated. (*See* Gov't Ex. 33, Dkt. No. 360.) Missenis has also attested to the fact that he immediately sealed, secured, and stored each disc after removing it from the recording device. (*See id.*)

Accordingly, federal law controls and the motions to suppress on the basis of untimely sealing are denied.

### 6. Explanation of Results in Applications for Warrant Extensions

Maxwell and Santana move to suppress Target Phone 8 and 12 extension conversations on grounds that the warrant applications do not describe the results obtained thus far or explain the failure to obtain such results in violation of N.Y. Crim. Proc. Law § 700.40. This argument is rejected.

The extension applications incorporated Missenis affidavits which

described the results of the wiretaps in great detail.  (*See* Gov't Exs. 15,

16, 22, 23, Dkt. No. 360.)  Thus, § 700.40 was not violated.  *See* also

*Darling*, 95 N.Y.2d at 537 ("'Strict compliance' does not entail

hypertechnical or strained obedience, nor is common sense its enemy.").

Therefore, under both federal and state law, the motions are denied.

### 7.    15-Day Notice Requirement of N.Y. CRIM. PROC. LAW § 700.70

Maxwell, Williams, Santana, and Wallace challenge Target Phones 2-

6, 8-9, and 12, arguing that they were not provided copies of the

eavesdropping warrants and applications within fifteen days of their

arraignment in violation of N.Y. CRIM. PROC. LAW § 700.70.  This argument

is rejected.

This court's choice of law holding to the contrary, even if state law

applies, it does so pursuant to *Sotomayor*.  As already stated, *Sotomayor*

instructs that state wiretap statutes should be applied only where the

statute is "designed to protect an individual's right of privacy."  592 F.2d at

1225.  The New York Court of Appeals has indicated that the purpose of §

700.70 is to "alert criminal defendants to the existence of evidence that can

be introduced against them at trial so that a timely decision can be made

about whether to file a motion to suppress such evidence." *People v.*
*Liberatore*, 79 N.Y.2d 208, 213-14 (1992) (internal citations, quotation
marks, omissions, and modifications omitted).  As this purpose in no way
implicates a privacy interest, § 700.70 does not apply.  *See* also *Darling*, 95
N.Y.2d at 537 ("'Strict compliance' does not entail hypertechnical or
strained obedience, nor is common sense its enemy.").

   In any event, federal law controls and requires that a wiretap order
and application be served on the defendant 10 days before trial.  *See* 18
U.S.C. § 2518(9).  There is no contention that this provision was violated.

   Accordingly, under both federal and state law, the motions are
denied.

### 8.    Subscriber Information

   Maxwell, Williams, Santana, and Wallace challenge Target Phones 2-
6, 8-9, and 12, arguing that the warrants for these phones required Sprint-
Nextel to disclose subscriber information for unpublished phone numbers
appearing during the execution of the warrants despite the fact that such
relief was not requested.  No law is cited in support of this argument.
Further, each application for an eavesdropping warrant requested that the
warrant include a "Pen Register and a Trap and Trace Device or caller

identification feature with name and address."   (*See* Gov't Exs. 2-26, Dkt.

No. 360.)  Defendants' argument is rejected under both federal and state

law, and the motions are denied.  *See Darling*, 95 N.Y.2d at 537 ("'Strict

compliance' does not entail hypertechnical or strained obedience, nor is

common sense its enemy.").

### 9.    Propriety of Interception in Albany County

Maxwell, Williams, Santana, and Wallace challenge Target Phones 2-

6, 8-9, and 12, arguing that N.Y. CRIM. PROC. LAW § 700.05(4) was violated

because the warrants were issued by a Rensselaer County Judge while

interceptions occurred in Albany County.  This argument is rejected.

N.Y. CRIM. PROC. LAW § 700.10(1) provides, in part, that "*a justice*

may issue an eavesdropping warrant or a video surveillance warrant ...."

(emphasis added).  As defendant Maxwell points out,

> When the eavesdropping warrant is to authorize the
> interception of oral communications occurring in a vehicle or
> wire communications occurring over a telephone located in a
> vehicle, 'justice' means ... any county court judge of the county
> in which the eavesdropping device is to be installed or
> connected *or of any judicial department* or county in which
> communications are expected to be intercepted.

(Maxwell Mot. at 1, Dkt. No. 395) (quoting N.Y. CRIM. PROC. LAW §

700.05(4) (emphasis added).)  Invoking § 700.05(4), defendants contend

that Judge McGrath was not a "justice" with authority to issue the

eavesdropping warrants because he was a Rensselaer County Judge,

while the targeted communications were expected to be intercepted in

Albany County.  The court disagrees.  Both Rensselaer and Albany

counties are within New York's Third Judicial Department, and Judge

McGrath's issuance of the warrants did not violate § 700.54, regardless of

whether communications were intercepted in Albany County.  Furthermore,

the defendants have cited no federal authority.

Accordingly, the motions are denied under both federal and state law.


### 10.    Defective Applications

Citing N.Y. CRIM. PROC. LAW §§ 700.15 and 700.20, Vasconcellos,

Maxwell, and Wallace claim that conversations intercepted pursuant to the

March 9 and April 5 warrants for Target Phones 3, 6, 10, and 12 must be

suppressed because they were based on defective DeAngelis applications

which incorporated unsworn Missenis affidavits.  The sole factual basis for

this argument is that DeAngelis's applications incorporated two Missenis

affidavits that were unsworn until one day after her review.  The only legal

argument is strict compliance.

According to a Hanlon affidavit, he presented the wiretap applications and Missenis affidavits to District Attorney DeAngelis for her review one day before Missenis swore to the affidavits before Judge McGrath.  (*See* Gov't Resp., Hanlon Aff., Dkt. No. 360:28.)  On March 9 and April 5, Hanlon then presented the DeAngelis applications and the warrants to Judge McGrath, Missenis then swore to the affidavits, and Judge McGrath issued the warrants.  (*See id.*)  There were no changes in the Missenis affidavits from the time of Deangelis's review, and Missenis's execution of those affidavits.  (*See id.*)

The federal and New York wiretapping statutes do not require the applicant to personally appear before the issuing judge.  *See Tortorello*, 342 F. Supp. at 1034-35, *aff'd*, 480 F.2d 764 (2d Cir. 1973), *cert. denied*, 414 U.S. 866 (1973).  It is sufficient if the officer supplying probable cause is available to answer any questions the judge might have.  *See id.* at 1035.  The essential function of the applicant is to ensure that the appropriate federal and state prosecuting officials have authorized the interceptions.  *Cf.* 18 U.S.C. § 2516(1), (2).  The precise issue in *Tortorello* was whether the applicant had to appear before the judge, not whether the underlying affidavit had to be sworn at the time the applicant swore to her

application.  *See* 342 F. Supp. at 1035.  Nonetheless, there is no

fundamental difference between *Tortorello*'s holding and this case.  The

statute required DeAngelis as District Attorney to certify her view that

electronic surveillance was necessary and based on probable cause.  She

did not have to do that before Judge McGrath.  Where, as here, nothing

changed in Missenis's affidavits, there was no violation of either the federal

or state statute.  A contrary hypertechnical conclusion would require

strained obedience to New York's statute and make commonsense its

enemy.  *See Darling*, 95 N.Y.2d at 537.  Accordingly, the motions are

denied under federal and New York law.

### G.    <u>Audibility Hearing</u>

Wallace seeks an audibility hearing without specifying which

conversations he claims are inaudible.  The admissibility of tape recordings

is an evidentiary trial decision predicated on the proponent's ability to

produce clear and convincing evidence of the authenticity, accuracy, and

relevance of such recordings.  *See United States v. Ruggiero*, 928 F.2d

1289, 1303 (2d Cir. 1991).  Unless unintelligible portions are so substantial

as to render recordings untrustworthy, they are admissible and their weight

is then assessed by the jury.  *See United States v. Arango-Correa*, 851

F.2d 54, 58 (2d Cir. 1988); *United States v. Bryant*, 480 F.2d 785, 790 (2d Cir. 1973).  Since this is a trial issue, the motion is denied.

### H.    Evidentiary Hearings

The joining defendants request evidentiary hearings so that they can find factual support for their statutory violation arguments.  To the extent the court has not already addressed these arguments, the motions are denied because the defendants have either failed to particularize a factual basis for conducting such hearings, or because such hearings are unnecessary given the court's legal conclusions.

Wallace contests the integrity of Missenis's factual assertions in his warrant affidavits, and seeks a *Franks* hearing.  He generally asserts that Missenis misinterpreted facts and drew unwarranted conclusions, but he points to no specific material misstatements or omissions.  (*See* Wallace Mot. at 24, 26, Dkt. No. 356.)  Thus, he has failed to satisfy his burden of proving by a preponderance of the evidence that there were intentional or reckless material misstatements or omissions in any Missenis affidavit. *See United States v. Klump*, 536 F.3d 113, 119 (2d Cir. 2008). Accordingly, his motion is denied.

### IV.    The Search Warrants

Maxwell, Vasconcellos, Santana, and Wallace seek to suppress evidence seized pursuant to search warrants authorized by Judge McGrath at the conclusion of the electronic surveillance.

Taking the all inclusive approach, Wallace seeks to suppress anything seized from everywhere, but he has failed to demonstrate that he had an expectation of privacy in any search locations. Therefore, he has no standing, and his motion is denied. *See Miller*, 382 F. Supp.2d at 379-380.

Maxwell, Vasconcellos, and Santana argue that the facts in Missenis's supporting search affidavits were tainted by unlawfully intercepted conversations. The court has concluded that all interceptions were lawful. Therefore, there was no taint and their motions are denied.

Santana challenges the 2A Limerick Drive and 3 Elm Place searches, stating that the single supporting Missenis affidavit failed to establish probable cause. (*See* Santana Memo. of Law at 31-32, Dkt. No. 343:3; *see also* Missenis Aff., Dkt. No. 360:36.) She argues that the facts do not support a conclusion that she engaged in any criminality, and that intercepted conversations referenced in the affidavit have innocent explanations.

73

The earlier discussion of probable cause, judicial deference and the *Leon* good faith rule have equal application to the current analysis, and federal law governs.  *See Miller*, 382 F. Supp.2d at 363-64 (federal law); *see also* Sections III.B.3-4. and III.D.1., *supra* at pp. 29-31, 34-38 (*Leon* good faith, judicial deference, and probable cause).

On May 21, 2007, Judge McGrath authorized Missenis and others to search two Maxwell and Santana residences for specifically identified evidence associated with their participation in the Vasconcellos drug conspiracy.  (*See* Warrants, Dkt. No. 360:36.)  Once again, the Missenis affidavit recited his expertise in narcotics investigations and his expert conclusions concerning the fact that drug dealers store incriminating evidence in their residences, and use other fixed locations as a distribution site.  (*See* Missenis Aff. at 1-2, Dkt. No. 360:36.)  He particularly described both the locations and the evidence sought.  (S*ee id.* at 1, 3-4.)

From a practical and commonsense perspective, the court has reviewed the Missenis affidavit de novo.  The facts clearly established a fair probability that:  Maxwell and Santana were associates in the Vasconcellos drug conspiracy; they were storing and distributing cocaine in and from the Elm Place and Limerick Drive locations; Santana assisted Maxwell with

packaging and distribution; and there was reason to believe that particularly described evidence would be found in those two locations. The Missenis facts and expert conclusions were corroborated by a grand jury indictment, and video and electronic surveillance.[32] As for Santana's arguments, facts must be viewed in their totality and not in isolation. Furthermore, innocent explanations of isolated facts are not controlling. The totality of the facts unequivocally support the court's de novo conclusion that probable cause supported both warrants, and Judge McGrath's identical conclusion is accorded due deference.

Furthermore, Santana has not suggested, nor could she on the basis of the current record, that Judge McGrath abandoned his detached, neutral role, that Missenis was dishonest or reckless in preparing his supporting affidavit, or that Missenis's reliance on the warrants was unreasonable. Thus, the *Leon* good faith rule applies.

Accordingly, and for the alternative reasons stated, Santana's motion to suppress evidence seized during the execution of the Elm Place and Limerick Drive search warrants is denied.

---

[32]The indictment was returned by the federal grand jury in this case, and thus established probable cause to believe that Vasconcellos, Maxwell, and Santana were involved in the Vasconcellos drug conspiracy.

## V.    Conclusion

Based upon the foregoing, it is hereby ordered:

The motions of Maxwell, Williams, Santana, and Wallace to join other motions are granted, in part, insofar as such motions challenge wiretap warrants for which the joining defendants have established their standing or their entitlement to relief, all as stated herein; and

All other motions are denied.

Dated:  September 29, 2009
Albany, New York

United States District Court Judge